UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAR PROCESSING CORPORATION,
a Michigan corporation,

        Plaintiff,            Civil Action No.

v                                Hon.

                                     Mag. Judge

TAFT STETTINIUS & HOLLISTER,
LLP, an Ohio limited liability partnership,

        Defendant.
_____/

LENNON LAW PLLC
Edward G. Lennon (P42278)
Attorney for Plaintiff
355 S. Old Woodward, Ste. 100
Birmingham, MI 48009
(248) 723-1276
elennon@lennonlawpllc.com

STROBL & SHARP, P.C.
Thomas J. Strobl (P29794)
Attorneys for Plaintiff
300 E. Long Lake Rd., Ste. 200
Bloomfield Hills, MI 48304
(248) 540-2300
tstrobl@stroblpc.com
_____/

## COMPLAINT AND JURY DEMAND

     Plaintiff, Bar Processing Corporation, by and through its attorneys, for its

Complaint against Defendant, states as follows:

## INTRODUCTION

Plaintiff, Bar Processing Corporation ("BPC"), initiated a lawsuit in the United States District Court, Southern Division, case no. 18-12691, against several defendants, alleging among other things, the concerted, premeditated and intentional theft by the defendants of BPC's confidential business information and trade secrets, in order to form a competing steel processing business. ("First Lawsuit"). One of the defendants in the Underlying Lawsuit, Dennis J. Perrino ("Perrino"), was the former General Manager of BPC's steel processing facility located in Wickliffe, Ohio. Following his voluntary resignation, BPC's post-employment investigation revealed that, during his employment with BPC, Perrino improperly downloaded to personal external storage devices and emailed to his personal email address comprehensive and highly confidential business information and trade secrets, including company and plant wide budget data, pricing data and sales data, as well as customer specific pricing and sales data. Contemporaneous with the unlawful acquisition, disclosure and use of BPC's confidential information containing the financial blueprint for BPC's specialized steel processing business, Perrino, in combination with BPC customer Jade-Sterling Steel Co., Inc. ("Jade-Sterling"), was (a) acquiring real estate, financing and specialized steel processing equipment; (b) forming a new entity Great Lakes Steel Processing, LLC ("Great Lakes Steel") for purposes of unlawfully competing

against BPC's specialized business; and (c) soliciting key BPC employees, customers and suppliers on behalf of Great Lakes Steel for purposes of unlawfully competing against BPC. The underlying defendants' unlawful actions constituted willful and malicious violations of statutory and other applicable law, including Perrino's contractual obligations to BPC, tortious interference with business relationships, breach of fiduciary duty and duty of loyalty to BPC, conversion, conspiracy, unlawful competition and unjust enrichment.

BPC's investigation also revealed that Defendant, Taft Stettinius & Hollister, LLP ("Taft"), a law firm that was representing BPC at the time, counseled and assisted Perrino and Jade-Sterling in (i) breaching Perrino's duties owed to BPC; (ii) forming Great Lakes Steel; (iii) forming another entity, Crane Center Properties, LLC ("Crane Center); (iv) assisting Crane Center in purchasing the facility at which Great Lakes Steel would conduct its business in competition with BPC; and (v) assisting Great Lakes Steel and/or Crane Center in obtaining financing to fund their competing business. As discussed below, by counseling and assisting Perrino and Jade-Sterling in competing directly with BPC, Taft committed legal malpractice and breached fiduciary duties owed to BPC, Taft's then client.

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, Bar Processing Corporation ("BPC"), is a Michigan corporation that has its principal place of business located in the City of Flat Rock, Wayne County, Michigan.

2.     Defendant, Taft Stettinius & Hollister, LLP ("Taft"), a law firm, is an Ohio limited liability partnership with a principal place of business in Cincinnati, Ohio.

3.     Taft conducts business in Michigan, and Taft is liable for the acts and omissions of its attorneys and agents alleged herein under the principles of agency, vicarious liability and *respondeat superior*.

4.     The amount in controversy, exclusive of interest and costs, exceeds $75,000.  This Court has jurisdiction over this matter pursuant to 28 USC 1332.

## GENERAL ALLEGATIONS

### BPC is the nation's premier, specialized steel bar and tube processor.

5.     BPC specializes in processing customer-owned steel bar and tube stock to precise specifications.  BPC's advanced, specialized and unique operations and services include straightening, bar turning, bar polishing, sawing, centerless grinding, and inspection, including, but not limited to, eddy current, ultrasonic and visuals.

6. BPC operates a total of five (5) steel processing facilities located in Michigan, Illinois and Ohio, including its Wickliffe, Ohio facility (the "Wickliffe Facility").

7. BPC's steel processing business is a highly competitive business with extremely tight profit margins. BPC's competitive advantage is substantially dependent upon its ability to obtain and maintain customers and obtain, maintain and protect proprietary confidential and trade secretive business information, including, but not limited to, marketing strategies, methods of operation, machinery, equipment, distribution processes, sources of supplies, operating and other cost data, customer lists and customer contacts, supplier lists and supplier contacts, agreements and their terms and conditions, information received from third parties under an obligation of confidentiality, restricted disclosure or restricted use, and any other information which is not generally known, including but not limited to purchasing histories, product specifications, customized processing needs, specific pricing for services offered to and/or purchased by customers, pricing lists, business plans, customer quotes, and financial information, including, but not limited to, sales figures, profit margins, budgets and other financial data derived from or related to BPC's business (hereinafter referred to as "Confidential Information").

8.    BPC has devoted and expended considerable time, expense and other resources developing, servicing and maintaining its customers and goodwill, as well as obtaining, maintaining and protecting its Confidential Information identified in Paragraph 7 herein.

### BPC Employed Perrino as General Manager of its Wickliffe Facility.

9.    From approximately October 2011 until his voluntary resignation in July of 2018, BPC employed Perrino as the General Manager of its Wickliffe Facility, primarily responsible for the overall and day-to-day operation of the plant, including, but not limited to, developing, servicing and managing customers and/or customer accounts on BPC's behalf, and provided him with, and access to, comprehensive Confidential Information, including customer, business and financial information identified in Paragraph 7 herein.

10.    BPC's Wickliffe Facility employed a number of employees performing highly specialized steel processing and related business functions. As General Manager of the Wickliffe Facility, Perrino was responsible for supervising employees, maintaining and managing BPC supplier relationships and maintaining and managing customer relationships and needs, including BPC's relationship with customers Jade-Sterling and Republic Steel.

11.    Perrino was the designated key account manager for BPC's customer Republic Steel. As the key account manager for the Republic Steel

business relationship, Perrino had access to comprehensive Confidential Information, including pricing, sales and other information, related to BPC's valued business relationship with Republic Steel.

<b><u>Perrino Executed an Employment Agreement with  BPC.</u></b>

12.     In consideration for, and as a condition of, his employment, Perrino executed a written Employee Agreement dated October 7, 2011 (the "Agreement"), containing express confidentiality, non-competition and non-solicitation obligations set forth in Article V of the Agreement, during his "Employment Term" and for a period of one (1) year following the "Employment Term."   It is believed that a copy of this Agreement is in the possession of Defendant Taft.

13.     Article II of the Agreement provided: "The term "Employment Term" shall mean the period beginning on the date of this Agreement and ending two (2) years from the date hereof unless earlier terminated as herein provided."

14.     Pursuant to Section 5.01 of the Agreement titled "Non-Competition," Perrino covenanted, warranted and agreed that he would not use, publish, disseminate, distribute or otherwise disclose any Confidential Information identified in the Agreement.   Pursuant to Section 5.01 of the Agreement titled "Non-Competition," Perrino acknowledged and agreed that the restrictions set forth in Article V of the Agreement "are reasonable and necessary to protect BPC

under this Agreement and to safeguard the value, goodwill and trade secrets of the Business," as defined by the Agreement.

**Perrino Subsequently Executed Receipt and Acknowledgement of BPC's Superseding Contractual Handbook Policies**

15.     On January 25, 2013, during his initial employment term, Perrino executed the Receipt of Handbook dated February 1, 2013 (the "BPC Handbook"), which stated:  "I hereby certify that I am in receipt of the [BPC] Salary Employee Handbook, and acknowledge that I agree to the terms and conditions set forth in this Handbook."

16.     The BPC Handbook states, "This Handbook comprises your entire employment contract.  In case of any conflict between this Handbook and any other policy of [BPC], this handbook will prevail.  This Handbook supersedes any and all prior contracts, promises, policies, manuals, handbooks or understandings."

17.     The BPC Handbook policy titled "Business Conduct" states in relevant part, "**LOYALTY TO THE COMPANY** – No individual connected with [BPC] should be subject to or appear to be subject to influence, interests, or relationships which conflict with the best interests of the Company.  This necessitates avoiding any activity which might compromise or appear to compromise [BPC] or the individual." (Emphasis included).

18.     The BPC Handbook policy titled "Conflicts of Interest" states in relevant part:  "Each employee of [BPC] is expected to avoid any investment or

association which interferes, might interfere, or might appear to interfere with the independent exercise of judgment in the best interests of the Company . . . Conflicts of interest are limited to, but may not generally arise in the following situations . . . When an individual affiliated with [BPC] or a member of the individual's household has a significant direct or indirect financial interest or obligation to an actual or potential competitor, vendor or customer of the Company . . . When an individual affiliated with [BPC] misuses or discloses information obtained in the course of employment."

19.     The BPC Handbook documents and memorializes BPC's long-standing policy safeguarding BPC's Confidential Information, including trade secret information, in effect since approximately 2005.

20.     BPC's policy contained in the BPC Handbook and titled "Information to Outsiders and Confidentiality," provides:

> Our policy is that [BPC's] business, as well as information regarding any employee or person working at, or previously employed by [BPC], is strictly confidential.  Accordingly, no information concerning present or former employees, equipment, procedures, processes, supplier or customers, except so far as is necessary in the regular course of business, may be disclosed to persons outside the Company, such as but not limited to, customers, vendors, attorneys, credit managers, investigators, or the news media.  Any violation of this policy may result in discipline up to and including discharge.
>
> It is vital to the continuation of our business that employees also not divulge confidential information to others outside of [BPC], or use such information for the benefit of other individuals or companies, even after the employment relationship has ended.

Except in the performance of your assigned duties, [BPC] requires that you not divulge to others, or use for yourself, or for others, any confidential information you may obtain while employed by the Company. The only exception to this requirement is if you have written permission from the General Manager of [BPC] to do so.

Confidential information includes any trade secret or technical information which: (1) is not common knowledge among competitors to whom it may be useful; or (2) gives the Company an advantage over competition. It is sometimes very difficult to segregate confidential information from more general knowledge. For this reason, you are advised that the best precaution is not to divulge any information to unauthorized personnel, including [BPC] personnel, regarding our equipment, processes, codes, vendors, customers, pricing, sales, quality control, wages, benefits of other employment matters.

It is required that upon cessation of your employment, you deliver to [BPC] all records, codes, files and documents in your possession, including all copies, pertaining to the business of the Company.

21.    Additionally, BPC's "E-Mail and Other Telephone Communications" policy provides:

All electronic and telephonic systems and all communications and information transmitted by, received from, or stored in those systems are the property of [BPC] and as such are to be used solely for job-related purposes . . . employees are not permitted to use a code, access a file, copy any software or retrieve any stored communication unless authorized to do so [by BPC].

**Perrino Voluntarily Resigns his BPC Employment.**

22.    On or about July 2, 2018, Perrino informed BPC of his voluntary "resignation of the position of General Manager of the Wickliffe, Ohio plant effective July 16, 2018." Perrino's last day of work for BPC was July 10, 2018.

23.     In connection with his voluntary resignation, Perrino did not inform BPC that during his BPC employment he had formed or participated in the formation of a company, Great Lakes Steel, to directly compete with BPC and its highly specialized steel processing business.

24.     In connection with his voluntary resignation, Perrino did not inform BPC that during his BPC employment he had been working and/or partnering with a long-time customer of BPC, Jade-Sterling, to form, manage and operate a company, Great Lakes Steel, to directly compete with BPC and its highly specialized steel processing business.

25.     Taft, through its lawyers and, specifically, Kevin Barnes, assisted Perrino and Jade-Sterling in forming and structuring Great Lakes Steel and Crane Center to directly compete with BPC and its highly specialized steel processing business.

26.     In connection with his voluntary resignation, Perrino did not inform BPC that during his BPC employment he had solicited key BPC employees to work for Great Lakes Steel in competition with BPC and its highly specialized steel processing business.

27.     In connection with his voluntary resignation, Perrino did not inform BPC that he had improperly acquired, used and/or disclosed BPC's Confidential

Information for purposes of forming, operating and managing Great Lakes Steel, a direct competitor of BPC and its highly specialized steel processing business.

## **BPC Thereafter Discovers Unlawful Conduct**

28.     After receiving in early July of 2018 Perrino's written notice of his voluntary resignation, BPC was informed by certain key employees that Perrino had solicited the employees for purposes of working for a new, steel processing business that Perrino had formed or would be forming in competition with BPC.

29.     Following Perrino's voluntary resignation, BPC discovered additional, substantial evidence of Perrino's unlawful conduct during his BPC employment related to the formation of a new, competing steel processing business using BPC's Confidential Information, including, but not limited to, the following evidence identified below.

30.     On March 29, 2018, Perrino connected to his BPC computer an external electronic storage device and downloaded to the storage device an electronically stored BPC file named "Wickliffe 2017 Budget Template.xlsx," containing BPC's Confidential Information.

31.     On April 5, 2018, Perrino received voice mails from a real estate broker, Jeff Calig of NAI Daus, about meeting to look at commercial property, including a commercial building at "2500 Crane Center." Perrino's

communication with the real estate broker was unrelated to his BPC employment duties and responsibilities.

32.    On April 20, 2018, Taft lawyer Kevin Barnes ("Barnes") filed a name reservation with the Ohio Secretary of State for Great Lakes Steel.

33.    On April 24, 2018, Perrino connected an external electronic storage device to his BPC computer and downloaded to the storage device the following electronically stored files containing comprehensive BPC Confidential Information: "Wick Budget 2017.xlsx;" "Denny.xlsx;" "Wick Budget 2017 – Copy.xlsx;" and "GLSP.xlsx."

34.    On April 25, 2018, Perrino sent an email from his BPC work email address denny_perrino@host2.frm.com to Barnes at kbarnes@taftlaw.com.   The email contained a subject line titled "Agreement" and stated, "Kevin, Here you go: Thanks, Denny".   Attached to the email was a copy of Defendant Perrino's Employment Agreement with BPC dated October 7, 2011.

35.    On April 25, 2018, Articles of Organization were filed for Great Lakes Steel with the Ohio Secretary of State, identifying Barnes as Great Lakes Steel's authorized representative.   Upon information and belief, these Articles of Organization were filed by Taft.

36.    On May 3, 2018, Taft filed Articles of Organization for Center Properties.

37.     Crane Center was formed by Barnes, Great Lakes Steel and Taft for purposes of purchasing a plant located at 2500 Crane Centre Drive, Streetsboro, Ohio, as the location for a competitive steel processing facility.  Crane Center mortgage documents identify Scott B. Herman, the President of Jade-Sterling, as the Manager of Crane Center.

38.     BPC's investigation revealed that on May 22, 2018 and May 23, 2018, Perrino received voice mails from Dave Berkey, a representative of BPC's supplier, Saw Systems, Inc., related to an order or quote for a new steel processing saw.  The May 23, 2018 voice mail stated, "I'm a little concerned you had said something about July and you know we don't have a saw on order, so we could be looking at three months, June, July and August so I mean just trying to watch out to make sure you got a saw if you need it."  Upon information and belief, Perrino while employed with BPC, solicited BPC's supplier Saw Systems, Inc. for a new steel processing saw on behalf of  a new competing business and not BPC.

39.     On May 25, 2018, Perrino received a voice mail from real estate broker Jeffrey Calig of NAI Daus, about gaining access to BPC's Wickliffe Facility for a third party.  Upon information and believe, the requested access was for purposes of viewing and observing BPC's Wickliffe Facility and its operation, for purposes related to  a new competing business operation and facility.

40. On June 7, 2018, Perrino sent an email from his BPC work email address denny_perrino@host2.frm.com to his personal email address [tinber22000@yahoo.com](mailto:tinber22000@yahoo.com) and attached the following electronically stored files containing highly sensitive and comprehensive company-wide Confidential Information, including Confidential Information related to four other BPC facilities to which Perrino had no work responsibility whatsoever:

- "**Bar Processing 2018 Budget-.xlsx**", containing the following excel spreadsheets files titled: "Year-to-Year 2018"; "BPC 2018 by Division"; "BPC 2018 Budget"; "Group 2018 Budget"; "Monroe 2018 Budget"; "Newton Falls 2018 Budget"; "Newton Falls 2018 Budget"; "Chicago Heights 2018 Budget"; "Warren 2018 Budget"; and "Wickliffe 2018 Budget";

- **SHINSHO PRICING.xlsx**, containing the following excel spreadsheet file titled: "SHINSHO DW-40678."; and

- **BPC SALES DATA.xlsx**, containing the following excel spreadsheet files: "Annual Summary – Top 5 Customers Per Plant, Years: 2013-2016"; "2016 Pivot – Sum of Sales"; "2016 Data – Sales"; "2015 Pivot – Sum of Sales"; "2015 Data – Sales"; "2014 Pivot – Sum of Sales"; "Sheet 2 – Sum of Net Sales"; "BPC_2014_export – Source Document"; "2013 Pivot – Sum of Net Sales"; "BPC_2013_export – Net Sales"; "2012 Pivot – Sum of Net Sales"; "BPC_2012_export – 'TIMKEN"; and "Republic Steel Sales Breakdown – Republic Steel Years 2012 – 2015".

41. On June 7, 2018, a UCC-1 Financing Statement was filed by Fifth Third Bank, with the Ohio Secretary of State, securing assets and property of Great Lakes Steel. The address used for Great Lakes Steel in the UCC-1 Financing

Statement is 2300 E. Aurora Road, Twinsburg, OH 44087, which is the same address of Jade-Sterling.

42.     Upon information and belief, Defendant Taft represented Great Lakes Steel and Crane Center in connection with the financing Great Lakes Steel and Crane Center obtained from Fifth Third Bank.

43.     On June 14, 2018, Perrino received another voice mail from Dave Berkey of BPC's supplier Saw Systems, Inc.  The voice mail stated in part, "[J]ust letting you now [sic] the quotes should be being emailed by 1:00 and I needed to let you know that Hem Saw's in line to get four H160s which is going to back up the deliveries."   Upon information and belief, the solicited quotes from BPC's supplier for equipment used to process steel like BPC were made on behalf of the competing business and not BPC.

44.     On June 26, 2018, Perrino sent an email from his BPC email address denny_perrino@host2.frm.com to his personal email address Tinber22000@yahoo.com containing the subject line "Pricing Update."  Attached to the email was an electronically stored file titled "Republic Steel Price Guideline – August 2018" and containing highly sensitive BPC Confidential Information in the form of an excel spreadsheet titled "Bar Processing Corporation & Republic Steel – General Price Guideline August 1, 2018."

45.     On July 2, 2018, Perrino voluntarily resigned his BPC employment, after acquiring by improper means and using BPC's Confidential Information for his and Great Lakes Steel's competitive use.  The post-employment inspection of Perrino's BPC computer usage revealed that prior to June of 2018 he did not send any BPC Confidential Information from his BPC work email address to his personal email address.

46.     Prior to Perrino's voluntary resignation from BPC, Perrino conducted the following internet searches: Used Bar Peeler's for sale; Used Manufacturing Machines and Parts for sale; and Shipping Routes from Australia to Cleveland.  Upon information and belief, the internet searches conducted by Perrino during his BPC employment were unrelated to his BPC employment, and instead related to the purchase of steel processing equipment and machines on behalf of and for the benefit of Perrino, Great Lakes Steel and Jade-Sterling and their competing business.  For all of his internet searches and emails, Perrino used BPC's computer system, which operated from computer servers at BPC's Flat Rock, Michigan headquarters.

47.     On July 10, 2018, his last day of employment with BPC, Perrino called Dean Musarra, Vice President of Jade-Sterling, and spoke with him for more than 6 minutes before turning in his company cell phone and leaving the Wickliffe Facility on his last day of work.

48.     During his employment with BPC and leading up to his voluntary resignation, Perrino improperly downloaded to personal external storage devices and emailed to his personal email address comprehensive and highly Confidential Information and trade secrets, including company and plant wide budget data, pricing data and sales data, as well as customer specific pricing and sales data. This Confidential Information and trade secrets were prepared by BPC's management in its Flat Rock, Michigan headquarters and was disclosed within the company on a confidential basis for the purpose of performing management functions.

49.     Contemporaneous with the unlawful acquisition and use of BPC's Confidential Information containing the financial blueprint for BPC's specialized steel processing business, Perrino, in combination with BPC customer Jade-Sterling, was (a) acquiring real estate, financing and specialized steel processing equipment; and (b) soliciting key BPC employees, customers and suppliers, on behalf of Great Lakes Steel, for purposes of unlawfully competing against BPC. Upon information and belief, Perrino also solicited BPC customer Republic Steel for business on behalf of Great Lakes Steel.

50.     Perrino, Great Lakes Steel and Jade-Sterling, used BPC's Confidential Information and trade secrets to further their unlawful conduct.

51.     The actions of Perrino, Great Lakes Steel and Jade-Sterling constituted willful and malicious violations of statutory and common law, including Perrino's contractual obligations to BPC, tortious interference with business relationships, breach of fiduciary duty and duty of loyalty to BPC, conversion, conspiracy and unlawful competition.

52.     The subject steel industry involves different players who fulfill market demands based on volume. There are generally two kinds of steel special bar quality customers: those who have enough volume to buy direct from the mills and those who do not and have to buy smaller quantities from intermediaries called service centers. To buy direct from a mill, you need a large enough program to have the volumes a mill is willing to service. Jade-Sterling is a service center. It purchases bar steel in bulk and re-sells to customers who cannot buy direct.

53.     BPC is a toll processor, which means it contracts with the mills to process the steel ordered from the mills. To do this, the mill sends its customer's steel to BPC for processing and/or testing per customer specification, and after the processing is completed the steel is forwarded to the customer. The work is done on consignment, meaning BPC as a toll processor does take ownership of the steel it processes.

54.     The scope of the equipment order by Great Lakes Steel and the size of the craned building purchased for it clearly indicate that this endeavor was not

intended solely for Jade-Sterling owned steel. It is unlikely a service center such as Jade-Sterling could grow its non-toll processing customer base to solely support the size of its investment. Perrino solicited Republic Steel Corporation for business, which is consistent with an intent to toll process. Republic Steel is a mill. One of the BPC pricing sheets Perrino misappropriated was for Republic Steel.

55. Great Lakes Steel ordered a non-destructive testing line from Magnetic Analysis Corporation to detect surface and internal defects in steel bars. BPS is unaware of any service center that has such a non-destructive testing line, and Jade-Sterling uses the services of BPC minimally for non-destructive testing. To toll process for the mills, non-destructive testing lines are generally required.

## BPC files the First Lawsuit.

56. Because of the tortious activity and other wrongful conduct of Perrino, Jade-Sterling, and Great Lakes Steel, BPC was forced to file the First Lawsuit on August 28, 2018.

57. Given the clear and undeniable wrongful conduct, on August 31, 2018, Judge Bernard A. Friedman entered an Ex Parte Temporary Restraining Order and Order to Show Cause "in order to prevent immediate and irreparable harm resulting in the anti-competitive misappropriation of [BPC's] confidential

business information and trade secrets, loss of goodwill and interference with business relationships, including [BPC's] customer and employee relationships."

58.     Ultimately, the parties in the Underlying Lawsuit entered into a Confidential Settlement Agreement and Release dated December 19, 2018 ("Settlement Agreement").  Under the Settlement Agreement, ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████.[1]

59.     But for Taft's assistance with the scheme hatched by Perrino and Jade-Sterling, BPC would not have had to bring the First Lawsuit, BPC would not have had to enter into the Settlement Agreement ████████████████████

████████████████████████████████████████████████████.

## COUNT I

## LEGAL MALPRACTICE

60.     BPC hereby incorporates by reference the allegations contained in paragraphs 1 through 59 as if set forth herein in their entirety.

61.     Continuously from late 2015 through at least January, 2019, Taft represented BPC in multiple litigation matters involving BPC employees Willie

---

[1] Pursuant to the Comments to Local Rule 5.3, Plaintiff has redacted language describing the contents of the Settlement Agreement.  Upon entry of an appropriate order, Plaintiff will provide a copy of the Settlement Agreement and non-redacted complaint to Defendants.

Edwards and Anthony Johnson. As such, there was an ongoing attorney-client relationship between Taft and BPC.

62. Anthony Johnson was formerly employed at BPC's Wickliffe Facility. While Taft was representing BPC, it was advised by BPC and/or possessed knowledge that Perrino was the General Manager of the Wickliffe Facility.

63. Although the scheme hatched by Perrino and others was clearly designed to directly compete with BPC, Taft provided legal services and assisted Perrino, Great Lakes Steel and Jade-Sterling in those matters that were directly adverse to BPC.

64. Upon information and belief, Taft did not perform or failed to properly perform a conflicts check before providing legal services to Perrino, Great Lakes Steel and Jade-Processing that were directly adverse to BPC.

65. As the attorneys for BPC from late 2015 through at least November, 2018, Taft owed BPC the duty to recognize established rules of law and the duty to do that which attorneys of ordinary learning, judgment or skill would or would not do under the same or similar circumstances.

66. Taft breached duties owed to BPC and committed legal malpractice in at least the following ways:

      a.     Failing to perform a conflicts check before rendering legal services to Perrino, Great Lakes Steel and Jade-Sterling in

matters that were directly adverse to BPC, Taft's existing client;

b.     Failing to recognize that Perrino, Great Lakes Steel and Jade-Sterling were engaged in tortious and other wrongful acts;

c.     Failing to advise BPC that Perrino, Great Lakes Steel and Jade-Sterling were engaged in tortious and other wrongful activity that was directly adverse to BPC, Taft's existing client;

d.     Upon information and belief, failing to advise Perrino, Great Lakes Steel and Jade-Sterling that their actions were tortious and wrongful, and that BPC would possess multiple meritorious claims against them;

e.     Upon information and belief, failing to advise Perrino, Great Lakes Steel and Jade-Sterling that they should not engage in tortious and other wrongful activity that was directly adverse to BPC, Taft's existing client;

f.     Forming Great Lakes Steel, the purpose of which was to compete against BPC, Taft's existing client;

g.     Forming Crane Center, the purpose of which was to purchase a facility that would compete against BPC, Taft's existing client;

h.     Upon information and belief, representing Great Lakes Steel and Crane Center in connection with their lending relationship with Fifth Third Bank, all to the detriment of BPC, Taft's existing client.

67.     Upon information and belief, Perrino sent his employment agreement with BPC to Taft's Barnes to review because Perrino and Jade-Sterling knew that the plan they were about to embark upon was questionable, and they relied on Taft's guidance as to whether Great Lakes Steel, Jade-Sterling and Perrino should embark upon their wrongful venture.

68.     As a direct and proximate result of Defendant's legal malpractice set forth above, BPC has incurred at least the following damages: (a) substantial monies paid pursuant to the Settlement Agreement; (b) legal fees, costs and other expenses incurred in prosecuting the First Lawsuit; (c) loss of employees and employee restructuring expenses; and (d) lost revenues and/or profit.

## COUNT II

## BREACH OF FIDUCIARY DUTIES

69.     BPC hereby incorporates by reference the allegations contained in paragraphs 1 through 68 as if set forth herein in their entirety.

70.     Continuously from late 2015 through at least January, 2019, Taft represented BPC in multiple litigation matters involving BPC employees Willie Edwards and Anthony Johnson.  As such, there was an ongoing attorney-client relationship between Taft and BPC.

71.     Although the scheme hatched by Perrino and others was clearly designed to directly compete with BPC, Taft provided legal services and assisted Perrino, Great Lakes Steel and Jade-Sterling in those matters that were directly adverse to BPC.

72.     Upon information and belief, Taft did not perform or failed to properly perform a conflicts check before providing legal services to Perrino, Great Lakes Steel and Jade-Sterling  that were directly adverse to BPC.

73.     As the attorneys for BPC from late 2015 through at least November, 2018, even when performing legal services for other clients, Taft owed continuing fiduciary duties to BPC, including the duties of loyalty and fidelity.

74.     Taft breached fiduciary duties owed to BPC and committed legal malpractice in at least the following ways:

a.      Failing to perform a conflicts check before rendering legal services to Perrino, Great Lakes Steel and Jade-Sterling in matters that were directly adverse to BPC, Taft's existing client;

b.      Failing to recognize that Perrino, Great Lakes Steel and Jade-Sterling were engaged in tortious and other wrongful acts;

c.      Failing to advise BPC that Perrino, Great Lakes Steel and Jade-Sterling were engaged in tortious and other wrongful activity that was directly adverse to BPC, Taft's existing client;

d.      Upon information and belief, failing to advise Perrino, Great Lakes Steel and Jade-Sterling that their actions were tortious and wrongful, and that BPC would possess multiple meritorious claims against them;

e.      Upon information and belief, failing to advise Perrino, Great Lakes Steel and Jade-Sterling that they should not engage in tortious and other wrongful activity that was directly adverse to BPC, Taft's existing client;

f.      Forming Great Lakes Steel, the purpose of which was to compete against BPC, Taft's existing client;

g.      Forming Crane Center, the purpose of which was to purchase a facility that would compete against BPC, Taft's existing client;

h.      Upon information and belief, representing Great Lakes Steel and Crane Center in connection with their lending relationship with Fifth Third Bank, all to the detriment of BPC, Taft's existing client.

75.     Upon information and belief, Perrino sent his employment agreement with BPC to Taft's Barnes to review because Perrino and Jade-Sterling knew that the plan they were about to embark upon was questionable, and they relied on Taft's guidance as to whether Great Lakes Steel, Jade-Sterling and Perrino should embark upon their wrongful venture.

76.     As a direct and proximate result of Defendant's breaches of fiduciary duties set forth above, BPC has incurred at least the following damages: (a) substantial monies paid pursuant to the Settlement Agreement; (b) legal fees, costs and other expenses incurred in prosecuting the First Lawsuit; (c) loss of employees and employee restructuring expenses; and (d) revenues and/or profit.

Wherefore, Plaintiff prays for a judgment against Defendant, awarding:

a.     actual damages in excess of $75,000;
b.     costs, interest and expenses, including attorney fees; and
c.     exemplary damages as permitted by law.

Respectfully submitted,

LENNON LAW PLLC

/s/Edward G. Lennon
Edward G. Lennon (P42278)
Attorney for Plaintiff
355 S. Old Woodward, Ste. 100
Birmingham, MI 48009
(248) 723-1276
elennon@lennonlawpllc.com

Dated: April 16, 2019

**<u>JURY DEMAND</u>**

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

LENNON LAW PLLC

/s/Edward G. Lennon
Edward G. Lennon (P42278)
Attorney for Plaintiff
355 S. Old Woodward, Ste. 100
Birmingham, MI 48009
(248) 723-1276
Dated: April 16, 2019        elennon@lennonlawpllc.com