UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAR PROCESSING CORPORATION,
a Michigan corporation,

                          Civil Action No. 19-11120

      Plaintiff,           Honorable Bernard A. Friedman

v                         Magistrate Judge Elizabeth A. Stafford

TAFT STETTINIUS & HOLLISTER,
LLP, an Ohio limited liability partnership,

        Defendant.

_____/

| | |
|---|---|
| LENNON LAW PLLC | MILLER, CANFIELD, |
| Edward G. Lennon (P42278) | PADDOCK & STONE, PLC |
| Attorney for Plaintiff | Thomas W. Cranmer (P25252) |
| 355 S. Old Woodward | Michael W. Hartmann (P25373) |
| Ste. 100 | Robert E. Murkowski (P73381) |
| Birmingham, MI 48009 | Erika L. Giroux (P81998) |
| (248) 723-1276 | Attorneys for Defendant |
| elennon@lennonlawpllc.com | 150 W. Jefferson Ave., Ste. 2500 |
| | Detroit, MI 48226 |
| STROBL SHARP PLLC | (313) 496-8423 |
| Thomas J. Strobl (P29794) | cranmer@millercanfield.com |
| Attorneys for Plaintiff | hartmann@millercanfield.com |
| 300 E. Long Lake Rd. | murkowski@millercanfield.com |
| Ste. 200 | Giroux@millercanfield.com |
| Bloomfield Hills, MI 48304 | |
| (248) 205-2713 | |
| tstrobl@stroblpc.com | |

_____/

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, TO TRANSFER VENUE**

## STATEMENT OF ISSUES PRESENTED

1.     Does Michigan law apply to this legal malpractice case pending in Michigan and which is brought by a Plaintiff which has a principal place of business in Wayne County, Michigan?

> Plaintiff answers "Yes"
> Defendant answers "No"
> This Court should answer "Yes"

2.     Does Michigan law recognize legal malpractice and breach of fiduciary duties claims?

> Plaintiff answers "Yes"
> Defendant did not answer
> This Court should answer "Yes"

3.     Under Ohio law, may Defendant be held vicariously liable for the legal malpractice of Taft attorney Kevin Barnes?

> Plaintiff answers "Yes"
> Defendant answers "No"
> This Court should answer "Yes"

4.     Given this case was filed by a Michigan business prior to the case pending in the Northern District of Ohio, and given this case is related to another case formerly pending in this Court, should this case be transferred to the Northern District of Ohio?

> Plaintiff answers "No"
> Defendant answers "Yes"
> This Court should answer "No"

i

## <u>CONTROLLING AUTHORITY</u>

*Alpha Capital Management, Inc v Rentenbach, et al*, 287 Mich App 589, 603; 792 NW2d 344 (2010)...................................................................................17

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).....................................................................................11

*Bailey v. Schaaf (On Remand)*, 304 Mich. App. 324, 347; 852 N.W.2d 180 (2014)..................................................................................................16

*Beattie v Firnschild*, 152 Mich App 785, 792-793; 394 NW2d 107 (1986).........14

*CenTra, Inc. v. Estrin*, 538 F.3d 402 (6th Cir. 2008).................................12

*Charles Reinhart Co v. Winiemko*, 444 Mich. 579, 585-586; 513 N.W.2d 773 (1994).................................................................................................13

*Coleman v. Gurwin*, 443 Mich 59, 63; 503 N.W.2d 435 (1993).....................13

*Deluca v. Jehle*, No. 266073, 2007 Mich. App. LEXIS 858, 2007 WL 914350, at *3 (Mich. Ct. App. Mar. 27, 2007) (unpublished).........................................14

*EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)...............10

*Florida Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 999 (6th Cir. 2015) (quoting *Tucker*, 539 F.3d at 549)....................................................10

*Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003).....................11

*Home Ins Co v. Dick*, 281 U.S. 397, 408; 50 S. Ct. 338; 74 L. Ed. 926 (1930).....12

*In Re Karmey*, 468 Mich 68, 74, n3; 658 NW2d 796 (2003).........................16

*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).........10

*John Hancock Mut Life Ins Co v. Yates*, 299 U.S. 178; 57 S. Ct. 129; 81 L. Ed. 106 (1936)...............................................................................................12

*Kelly Services v Eidnes*, 530 F.Supp.2d 940, 949 (2008)..............................20

*McCuiston v Hoffa*, 313 F.Supp.2d 710, 719..........................................20

*McInnis v. Hyatt Legal Clinics*, 10 Ohio St.3d 112, 113, 10 Ohio B. 437, 461 N.E.2d 1295 (1984).................................................................................14

*Meyer & Anna Prentis Family Foundation, Inc. v Barbara Ann Karmanos Cancer Institute*, 266 Mich App. 39, 47; 698 NW2d 900 (2005)..............................17

*Midwest Motor Supply v. Kimball*, 761 F.Supp. 1316 (S.D.Ohio 1991).............19

*Natl' Union Fire Ins. Co. v Wuerth*, 122 Ohio St. 3d 594, 600 (2009)..............17

*Overland, Inc. v Taylor*, 79 F. Supp. 2d 809, 811 E.D. Mich. 2000) (citing *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989)................................................................................................18

*Passerell v Cordell*, 2015-Ohio-1767, 2015 Ohio App. LEXIS 1714 at (*39,40)..14

*Perotti v. Beck*, 7th Dist. No. 00CA249, 2001-Ohio-3413 (Sept. 24, 2001)........14

*Recker v. Malson*, No. 268230, 2006 Mich. App. LEXIS 2543, 2006 WL 2380960, at *3 (Mich. Ct. App. Aug. 17, 2006) (unpublished)..................................14

*Rippey v Wilson*, 280 Mich 233, 243; 273 NW2d 552 (1937).........................16
*Shoemaker v. Gindlesberger*, 118 Ohio St. 3d 226, 2008- Ohio 2012, 887 N.E.2d 1167, 1170 (Ohio 2008)..............................................................................13
*Superior Consulting v. Walling,* 851 F.Supp. 839, 845 (E.D.Mich.1994)...........20
*Sutherland v. Kenning Truck Serv.*, 454 Mich. 274, 286; 562 N.W.2d 466 (1997)...............................................................................................................11
*Thomas v. Home Depot U.S.A., Inc.*, 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001) (quoting *Rowe v. Chrysler Corp.*, 520 F. Supp. 15, 16 (E.D. Mich. 1981)..........19
*Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)...........10
*Woodruff v. Tomlin*, 616 F.2d 924, 935-36 (6th Cir.) (en banc), *cert. denied*, 449 U.S. 888, 101 S. Ct. 246, 66 L. Ed. 2d 114 (1980).......................................13

## STATUTES

*Fed. R. Civ. P. 12(c)*.....................................................................................10
*Fed. R. Civ. P. 12(b)(6)*................................................................................10
*Fed. R. Civ. P. 8(a)(2)*.................................................................................11
MRPC 1.7 (a).................................................................................................14
ORPC 1.7(a)..................................................................................................15
MRPC 1.10(a)...............................................................................................16

## TABLE OF CONTENTS

Statement of Issues Presented...................................................................i

Controlling Authority.............................................................................ii

Introduction............................................................................................1

Counter-Statement of Facts.....................................................................2

   A.   The Parties......................................................................................2

   B.   BPC employed Perrino as General Manager of its Wickliffe Facility.........3

   C.   Perrino was subject to Restrictive Covenant Obligations.......................3

   D.   Perrino voluntarily resigned his BPC employment...............................4

   E.   BPC discovers Perrino's unlawful conduct........................................,..5

   F.   BPC discovers Taft's involvement....................................................5

   G.   BPC files the first lawsuit..............................................................7

   H.   BPC files a complaint against Taft in Michigan..................................9

   I.   BPC files a complaint against Barnes in Ohio....................................9

   J.   The BPC/Taft attorney-client relationship ends.................................10

Argument...............................................................................................10

   I.   Standard of review.......................................................................10

   II.   The elements of a legal malpractice claim are the same under Michigan and Ohio law. This Court should apply Michigan law to the claims asserted in this case........................................................................................11

   III.   Under Michigan law, Taft may be held vicariously liable for the legal malpractice and breach of fiduciary duties of its attorneys....................16

   IV.   Under Ohio law, Taft may be held vicariously liable for the legal malpractice of Barnes......................................................................17

   V.   This case should not be transferred to the Northern District of Ohio.........18

Conclusion.............................................................................................22

## INTRODUCTION

At the time of the acts giving rise to this lawsuit, Defendant law firm operated offices in Ohio, Michigan and other locations.[1]  Notwithstanding Taft's several years continuous attorney-client relationship with Plaintiff, Bar Processing Corporation ("BPC"), which has its principal place of business in Michigan, Defendant's lawyers breached their professional duties when they did legal work for other entities and a BPC employee that was directly adverse to BPC.  Michigan and Ohio law are no different in this regard.  Defendant law firm committed legal malpractice and breached fiduciary duties when it performed legal work that resulted in an impermissible conflict of interest.  Defendant's motion for judgment on the pleadings should be denied, and this Court should deny Defendant's motion to transfer this case – which rests on many of the same facts and circumstances giving rise to a prior case presided over by this Court, *Bar Processing Corporation v Dennis J. Perrino*, et al, U.S.D.C., E.D. Mich. Case no. 18-cv-12691.

---

[1]According to its website in existence at the time this suit was filed, Taft previously maintained an office in Ann Arbor, Michigan.  That reference has now disappeared from the website.  Taft stated in its brief it "currently has no offices in Michigan" (p 13), failing to disclose that it formerly (apparently) had an office in Michigan.  Taft has not challenged this Court's jurisdiction over it.

## COUNTER-STATEMENT OF FACTS

### A. The Parties

Plaintiff, Bar Processing Corporation ("BPC"), is a Michigan corporation that has its principal place of business and headquarters located in the City of Flat Rock, Wayne County, Michigan. BPC operates a total of five (5) steel processing facilities located in Michigan, Illinois and Ohio, including its Wickliffe, Ohio facility (the "Wickliffe Facility"). BPC specializes in processing customer-owned steel bar and tube stock to precise specifications. (Complaint, ¶¶ 1, 5-6).[2]

Defendant, Taft Stettinius & Hollister, LLP ("Taft"), a law firm, is an Ohio limited liability partnership with a principal place of business in Cincinnati. (Complaint, ¶ 2). Continuously from late 2015 through at least July, 2019, Taft represented BPC in multiple litigation matters involving BPC employees, including Willie Edwards and Anthony Johnson. As such, there was an ongoing attorney-client relationship between Taft and BPC during that time period. (Complaint, ¶ 61). In connection with that continuous relationship, attorney Lawrence Davidson, who worked out of Taft's Columbus, Ohio office, was the primary Taft attorney representing BPC and worked directly with BPC's

---

[2] BPC's front office functions are centralized through its Flat Rock, Michigan headquarters. The servers for both the email and internet systems are housed in Flat Rock, as well as all personnel functions, including payroll.

2

representatives located at BPC's Flat Rock, Michigan headquarters, and Taft sent all invoices directly to BPC's Flat Rock, Michigan headquarters.

## B.    BPC Employed Perrino as General Manager of its Wickliffe Facility

From approximately October 2011 until his voluntary resignation in July of 2018, BPC employed Dennis J. Perrino ("Perrino") as the General Manager of its Wickliffe Facility, primarily responsible for the overall and day-to-day operation of the plant, including, but not limited to, supervising employees, maintaining and managing BPC supplier relationships and maintaining and managing customer relationships and needs, including BPC's relationship with customers Jade-Sterling and Republic Steel.  Perrino was the designated key account manager for BPC's customer Republic Steel, and had access to BPC's comprehensive confidential information, including pricing, sales and other information, related to BPC's valued business relationship with Republic Steel.[3]  (Complaint, ¶¶ 9-11).

## C.    Perrino was Subject to Restrictive Covenant Obligations

In consideration for, and as a condition of, his employment with BPC, Perrino executed a written Employee Agreement dated October 7, 2011 (the "Agreement"), containing express confidentiality, non-competition and non-solicitation obligations during his initial two year "Employment Term" and for a

---

[3] BPC processed for Republic Steel at much of its five plants, including BPC's two Michigan plants.

3

period of one (1) year following the "Employment Term." It is believed that a copy of this Agreement is in the possession of Defendant Taft. (Complaint, ¶¶ 12-14).

On January 25, 2013, during his initial employment term, Perrino subsequently executed his Receipt and Acknowledgement of the superseding BPC Handbook dated February 1, 2013 (the "BPC Handbook"), containing express contractual policies governing duty of loyalty, conflicts of interests, confidentiality (including trade secret information) and use of company e-mail and communication devices. (Complaint, ¶¶ 15-21).

### D. Perrino Voluntarily Resigned his BPC Employment

On or about July 2, 2018, Perrino informed BPC of his voluntary "resignation of the position of General Manager of the Wickliffe, Ohio plant effective July 16, 2018." Perrino's last day of work for BPC was July 10, 2018. (Complaint, ¶¶ 22-23). After receiving Perrino's written notice of his voluntary resignation, BPC was informed by certain key employees that Perrino had solicited the employees for purposes of working for a new, unidentified steel processing business that Perrino had formed or would be forming in competition with BPC. (Complaint, ¶ 28).

### E.    BPC Discovers Perrino's Unlawful Conduct

Following Perrino's voluntary resignation, BPC conducted an investigation, including a forensic examination of Perrino's email and computer activity, and discovered substantial evidence of Perrino's unlawful conduct during his BPC employment related to the formation of a new, competing steel processing business using BPC's confidential information and trade secrets. (Complaint, ¶29). The investigation revealed that during his employment and leading up to his voluntary resignation, Perrino improperly downloaded to personal external storage devices and emailed to his personal email address comprehensive and highly confidential information and trade secrets, including company and plant wide (including BPC's two Michigan plants) budget data, pricing data and sales data, as well as customer specific pricing and sales data. (Complaint, ¶¶ 30-44). The confidential information and trade secrets were prepared by BPC's management in its Flat Rock, Michigan headquarters and was disclosed within the company on a confidential basis for the purpose of performing management functions. (Complaint, ¶ 48).

### F.    BPC Discover's Taft's Involvement

In connection with its investigation, BPC also discovered Taft's involvement in assisting and/or representing Perrino and BPC customer Jade-Sterling in the

formation of a competing steel processing business, using BPC's misappropriated

financial blueprint. More specifically, BPC learned the following:

- On April 20, 2018, Taft lawyer Kevin Barnes ("Barnes") filed a name reservation with the Ohio Secretary of State for Great Lakes Steel.

- On April 25, 2018, Perrino sent an email from his BPC work email address to Barnes. The email contained a subject line titled "Agreement" and stated, "Kevin, Here you go: Thanks, Denny". Attached to the email was a copy of Defendant Perrino's Employment Agreement with BPC dated October 7, 2011.

- On April 25, 2018, Articles of Organization were filed for Great Lakes Steel with the Ohio Secretary of State, identifying Barnes as Great Lakes Steel's authorized representative. Upon information and belief, these Articles of Organization were filed by Taft.

- On May 3, 2018, Taft filed Articles of Organization for Crane Center Properties. Crane Center was formed by Barnes, Great Lakes Steel and Taft for purposes of purchasing a plant located at 2500 Crane Centre Drive, Streetsboro, Ohio, as the location for a competitive steel processing facility. Crane Center mortgage documents identify Scott B. Herman, the President of Jade-Sterling, as the Manager of Crane Center.

- On June 7, 2018, a UCC-1 Financing Statement was filed by Fifth Third Bank, with the Ohio Secretary of State, securing assets and property of Great Lakes Steel. The address used for Great Lakes Steel in the UCC-1 Financing Statement is 2300 E. Aurora Road, Twinsburg, OH 44087, which is the same address of Jade-Sterling. Upon information and belief, Defendant Taft represented Great Lakes Steel and Crane Center in connection with the financing Great Lakes Steel and Crane Center obtained from Fifth Third Bank, using BPC's misappropriated financial data.

(Complaint, ¶¶ 32, 34-37, 41).

6

Contemporaneous with the unlawful acquisition and use of BPC's Confidential Information containing the financial blueprint for BPC's specialized steel processing business, Perrino, in combination with BPC customer Jade-Sterling, was (a) acquiring real estate, financing and specialized steel processing equipment and (b) soliciting key BPC employees, customers and suppliers, on behalf of Great Lakes Steel, for purposes of unlawfully competing against BPC. Upon information and belief, Perrino also solicited BPC customer Republic Steel for business on behalf of Great Lakes Steel.

### G.    BPC files the First Lawsuit

On August 28, 2018, BPC initiated a prior lawsuit in this same United States District Court for the Eastern District of Michigan, Southern Division, Case No. 18-12691 (the "First Lawsuit"), before Judge Friedman, against Perrino, Great Lakes Steel and Jade-Sterling, alleging among other things, the concerted, premeditated and intentional theft by the defendants of BPC's confidential business information and trade secrets, in order to form a competing steel processing business.

On August 28, 2018, BPC's counsel in the First Lawsuit emailed Taft attorney Barnes and Perrino a copy of the filed Verified Complaint for Injunctive and Other Relief, and demanded that the defendants immediately cease and desist from any further unlawful conduct. (**Exhibit A**).  On August 29, 2018, BPC's

counsel received a responsive email from Taft attorney David H. Wallace, stating, "Do you have time for a call today or tomorrow? On behalf of the corporate defendants, I have a few questions. Please let me know." (**Exhibit A**). On August 30, 2018, during the scheduled conference call, BPC's counsel informed Wallace that BPC was a current client of Taft. (**Exhibit A**). Wallace indicated that he was unaware that BPC was a Taft client, and consequently ended the call to address a potential conflict issue. (**Exhibit A**). Later that same day, Wallace emailed BPC's counsel and stated, "I have confirmed the existence of the conflict of interest that you advised me up [sic] earlier today. Prior to that telephone conversation, I was not aware of the conflict. I have advised my clients that I cannot represent them in this matter . . . ." (**Exhibit A**). On September 10, 2018, Taft attorney Lawrence Davidson advised BPC (incorrectly) that Defendant began representing Great Lakes Steel Processing and Jade-Sterling Steel Co. on August 28, 2018, and Mr. Davidson suggested that Defendant never represented Perrino. (**Exhibit A**).

Prior to the Court's scheduled preliminary injunction hearing, the parties in the First Lawsuit entered into a Confidential Settlement Agreement and Release dated December 19, 2018 ("Settlement Agreement").[4] Pursuant to the Settlement

---

[4] On August 31, 2018, Judge Friedman entered an Ex Parte Temporary Restraining Order and Order to Show Cause "in order to prevent immediate and irreparable harm resulting in the anti-competitive misappropriation of [BPC's] confidential business information and trade secrets, loss of goodwill and interference with business relationships, including [BPC's] customer and employee relationships."

8

Agreement, in exchange for a Stipulated Injunction Order, certain equipment, a processing agreement and other consideration, BPC agreed to pay substantial monies to the underlying defendants and to voluntary dismiss the claims against Great Lakes Steel, Jade-Sterling and Perrino.

## H.    BPC Files a Complaint Against Taft in Michigan

On April 17, 2019, BPC filed the present case against Taft for legal malpractice and breach of fiduciary duties.  Taft, a law firm that was representing BPC at the time, counseled and assisted Perrino and Jade-Sterling in (i) breaching Perrino's duties owed to BPC, (ii) forming a direct competitor, Great Lakes Steel, (iii) forming another entity, Crane Center Properties, LLC ("Crane Center), (iv) assisting Crane Center in purchasing the facility at which Great Lakes Steel would conduct its business in competition with BPC and (v) assisting Great Lakes Steel and/or Crane Center in obtaining financing to fund their competing business.  By counseling and assisting Perrino and the corporate entities in competing directly with BPC, Taft committed legal malpractice and breached fiduciary duties owed to BPC, Taft's then existing client.

## I.    BPC Files a Complaint Against Barnes in Ohio

After Taft attorney Kevin Barnes ("Barnes") refused to consent to jurisdiction over him in this Court, on August 20, 2019, BPC filed a lawsuit against Barnes, individually, in the United States District Court, Northern District of Ohio,

9

Eastern Division, Case No. 1:19-cv-01885.  The Complaint alleged legal malpractice and breach of fiduciary duties.

### J.    The BPC/Taft Attorney-Client Relationship Ends

Taft continued to represent BPC in employment related matters, and send invoices to BPC's Flat Rock, Michigan headquarters, through at least August of 2019.  **(Exhibit B)**.  By letter dated October 25, 2019, BPC confirmed the termination of its attorney client relationship with Taft.  **(Exhibit B)**.

## ARGUMENT

### I.    Standard of review.

"After the pleadings are closed . . . a party may move for judgment on the pleadings." *Fed. R. Civ. P. 12(c)*.  Under such a motion "all well-pleaded material allegations of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).  A motion for judgment on the pleadings requires the same "standard of review employed for a motion to dismiss under *Rule 12(b)(6)*." *Florida Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 999 (6th Cir. 2015) (quoting *Tucker*, 539 F.3d at 549); *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).

A motion to dismiss under *Fed. R. Civ. P. 12(b)(6)* tests the sufficiency of

the plaintiff's complaint.  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. The court views the complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570).  A "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## II.    The elements of a legal malpractice claim are substantively the same under Michigan and Ohio law.  This Court should apply Michigan law to the claims asserted in this case.

In diversity cases, a court is to apply the choice of law rules and substantive law of the forum state. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003).  Generally, Michigan courts will apply Michigan law unless there exists a "rational reason" to do otherwise. *Sutherland v. Kenning Truck Serv.*, 454 Mich. 274, 286; 562 N.W.2d 466 (1997).  The Michigan Supreme court described the test for determining whether a rational reason exists to displace Michigan law:

> [W]e undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot

11

be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests. *Id.*

Seeking to apply Ohio law, Taft argues Ohio has a superior interest in this matter because of its interest in regulating Ohio lawyer Barnes.[5] In arguing this, Taft presents a false choice to this Court, as the applicable Michigan and Ohio substantive law is the same.

In *CenTra, Inc. v. Estrin*, 538 F.3d 402 (6th Cir. 2008), the plaintiff brought breach of contract, breach of fiduciary duties and legal malpractice claims against defendants, an attorney and law firm, based on the defendants' representation of the City of Windsor in opposing plaintiff's plan to add a second span to plaintiff's bridge that connected Windsor to Detroit. Addressing the choice of law issue, the Sixth Circuit stated:

> [W]e need not resolve the exact question of what Michigan's choice-of-law principles would indicate as the applicable standards of professional conduct because, for the issues we must address today, Michigan's standards of professional conduct are consistent with the other possible sources of law, making any asserted conflict of laws a false conflict. *Williams v. Toys "R" Us*, 138 Fed. Appx. 798, 803 (6th Cir. 2005) (unpublished).

---

[5] There is no support in the pleadings for Taft's assertion that Barnes does not practice law in Michigan. Even if there was, the mere presence of Taft's headquarters in Ohio, apparently Barnes' home office, is insufficient to support the application of Ohio law. *Sutherland*, 454 Mich. at 287, citing *Home Ins Co v. Dick*, 281 U.S. 397, 408; 50 S. Ct. 338; 74 L. Ed. 926 (1930); *John Hancock Mut Life Ins Co v. Yates*, 299 U.S. 178; 57 S. Ct. 129; 81 L. Ed. 106 (1936).

12

See also *Woodruff v. Tomlin*, 616 F.2d 924, 935-36 (6th Cir.) (en banc), *cert. denied*, 449 U.S. 888, 101 S. Ct. 246, 66 L. Ed. 2d 114 (1980) (Sixth Circuit affirmed district court's application of the forum state's professional conduct standards in a diversity-based legal malpractice action).

Here, as in *Centra, Inc.*, there is no conflict of laws, as Taft's representation of Great Lakes Steel, Jade-Sterling and Perrino in matters adverse to BPC constitutes an impermissible conflict of interest that is actionable under Michigan and Ohio law. Accordingly, this Court should apply Michigan law.

Both Michigan and Ohio law recognize legal malpractice causes of action, and the elements of a legal malpractice claim are essentially the same under Michigan and Ohio law. Under Michigan law, the elements of a legal malpractice claim are: (1) the existence of an attorney-client relationship; (2) negligence in the representation of the client; (3) that the negligence was a proximate cause of the injuries; and (4) the fact and extent of the injury alleged. *Charles Reinhart Co v. Winiemko,* 444 Mich. 579, 585-586; 513 N.W.2d 773 (1994); *Coleman v. Gurwin,* 443 Mich 59, 63; 503 N.W.2d 435 (1993). To sustain a cause of action in Ohio for legal malpractice, a plaintiff must prove five elements: "(1) an attorney-client relationship, (2) professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, and (5) damages." *Shoemaker v. Gindlesberger*, 118 Ohio St. 3d 226, 2008- Ohio 2012, 887 N.E.2d 1167, 1170 (Ohio 2008).

In order to establish the breach of duty element of a legal malpractice claim, both Michigan and Ohio law require a plaintiff to present expert testimony. See *Beattie v Firnschild*, 152 Mich App 785, 792-793; 394 NW2d 107 (1986) (plaintiff prosecuting a legal malpractice case must present expert testimony establishing the standard of care and breach of the standard of care); *McInnis v. Hyatt Legal Clinics*, 10 Ohio St.3d 112, 113, 10 Ohio B. 437, 461 N.E.2d 1295 (1984); and *Perotti v. Beck*, 7th Dist. No. 00CA249, 2001-Ohio-3413 (Sept. 24, 2001).

Invariably, any expert witness will rely substantially on the ethical rules governing lawyers to determine whether Taft and Barnes were engaged in an impermissible conflict of interest when they represented Great Lakes Steel, Jade-Sterling and Perrino in matters directly adverse to BPC.[6] Michigan attorneys are governed by the Michigan Rules of Professional Conduct ("MRPC"), and Ohio attorneys are governed by the Ohio Rules of Professional Conduct ("ORPC"); both of these sets of rules are based on the Model Rules of Professional Conduct published by the American Bar Association. Relative to the representation by Taft of parties in a matter directly adverse to BPC, Taft's existing client, MRPC 1.7 (a) states:

---

[6] As noted by the Sixth Circuit in *Centra, Inc.*, Michigan Courts have approved the use of the Michigan Rules of Professional Conduct as evidence of the standard of care in legal malpractice cases. *Recker v. Malson*, No. 268230, 2006 Mich. App. LEXIS 2543, 2006 WL 2380960, at *3 (Mich. Ct. App. Aug. 17, 2006) (unpublished); *Deluca v. Jehle*, No. 266073, 2007 Mich. App. LEXIS 858, 2007 WL 914350, at *3 (Mich. Ct. App. Mar. 27, 2007) (unpublished) (allowed rules to be cited in jury instructions). Similarly, under Ohio law, in conflict cases like this, expert testimony is required to apply the Ohio Rules of Professional Conduct and support the legal malpractice claim. See *Passerell v Cordell*, 2015-Ohio-1767, 2015 Ohio App. LEXIS 1714 at *39, 40.

14

> A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
> (1) the lawyer reasonable believes the representation will not adversely affect the relationship with the other client; and
> (2) each client consents after consultation.

Similarly, ORPC 1.7(a) states:

> A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:
> (1) the representation of that client will be directly adverse to another current client;
> (2) there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyers' responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.

While addressed in Rule 1.7(a) of the MRPC, Rule 1.7(b) of the ORPC addresses the circumstances in which the client may consent to the lawyer's conflict of interest:

> A lawyer shall not accept or continue the representation of a client if a conflict of interest would be created pursuant to division (a) of this rule, unless all of the following apply:
> (1) the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) each affected client gives informed consent, confirmed in writing,
> (3) the representation is not precluded by division (c) of this rule.

Because there is no allegation or evidence that BPC consented to any Taft conflict of interest, the application of the Michigan and Ohio ethical rules leads to the same conclusion: <u>Taft and Barnes were precluded from representing Great Lakes Steel,</u>

15

Jade-Sterling and/or Perrino if that representation was directly adverse to BPC.[7]
This is the standard to which Taft is held under both Michigan and Ohio law.

Taft's argument that Michigan has only a minimal interest in this dispute is, quite simply, incorrect and misplaced. Michigan has an interest in making sure that Michigan-based corporations do not fall victim to the tortious activity of out-of-state lawyers who elect to represent Michigan companies. For that reason, and because there is no conflict of laws, this Court should apply Michigan law to the legal malpractice and breach of fiduciary duties claims.

## III.  Under Michigan law, Taft may be held vicariously liable for the legal malpractice and breach of fiduciary duties of its attorneys.

It is undisputed that, under Michigan law, a law firm may be held vicariously liable for the malpractice and breaches of its fiduciary duties of its attorneys. *Bailey v. Schaaf (On Remand)*, 304 Mich. App. 324, 347; 852 N.W.2d 180 (2014) (a court may impose indirect responsibility on the principal for its agent's torts). As discussed in Argument II above, Michigan recognizes a cause of action for legal malpractice, a proposition not addressed or disputed by Taft. Michigan also recognized a cause of action for breach of fiduciary duties. "Damages may be obtained for a breach of fiduciary duty when a position of

---

[7] Relative to this issue, MRPC 1.10(a) provides that no lawyers in a firm may represent a client when any other lawyer within the same firm would be prohibited from doing so under Rule 1.7. ORPC 1.7(a) prohibits a lawyer from representing a client when the lawyer *"knows or reasonably should know"* that Rule 1.7 prohibits any lawyer in the firm from undertaking the representation.

16

influence has been acquired and abused, or when confidence has been reposed and betrayed." *Meyer & Anna Prentis Family Foundation, Inc. v Barbara Ann Karmanos Cancer Institute*, 266 Mich. App. 39, 47; 698 N.W.2d 900 (2005).

The attorney-client relationship is a type of fiduciary relationship. *In Re Karmey*, 468 Mich. 68, 74, n3; 658 N.W.2d 796 (2003); *Rippey v Wilson*, 280 Mich. 233, 243; 273 N.W.2d 552 (1937). When a fiduciary relationship exists, the fiduciary has a duty to act for the benefit of the principal regarding matters within the scope of the relationship. *Meyer & Anna Prentis Family Foundation, Inc, v Barbara Ann Karmanos Cancer Institute*, 266 Mich. App. 39, 40; 698 N.W.2d 900 (2005). "The common law has long recognized that an attorney's fiduciary duties extend to both current and former clients." *Alpha Capital Management, Inc v Rentenbach, et al*, 287 Mich. App. 589, 603; 792 N.W.2d 344 (2010) (citations omitted).

## IV.   Under Ohio law, Taft may be held vicariously liable for the legal malpractice of Barnes.

Taft's statement that "a law firm cannot be directly liable for legal malpractice" under Ohio law is both misleading and insignificant. As indicated by the Ohio Supreme Court in *Natl' Union Fire Ins. Co. v Wuerth*, 122 Ohio St. 3d 594, 600 (2009), Taft may be held vicariously liable for Barnes' legal malpractice:

> [W]e hold that a law firm may be vicariously liable for legal malpractice only when one or more of its principals or associates are liable for legal malpractice.

17

Contrary to Taft's argument, nothing in *Wuerth* requires that Barnes be joined as a Defendant in this lawsuit. All *Wuerth* requires is that Barnes eventually be held liable for vicarious lability to be imposed on Taft. Additionally, the cases on which Taft relies determined that a law firm could not be held liable because the statute of limitations had run on the claims against the individual attorneys. Because Barnes has no statute of limitations defense available in the Ohio Case, Taft may be held liable in this case once Barnes is found liable.

## V.  This case should not be transferred to the Northern District of Ohio.

Taft does not contend that the venue chosen by BPC is improper. Rather, pursuant to 28 U.S.C. § 1404(a), Taft seeks to transfer venue purportedly "for the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). Under § 1404(a), the Court may transfer a civil action to "any other district or division where it might have been brought." *Id.* In making this decision, the Court must determine (1) whether the action could have been brought in the proposed transferee district, (2) whether a transfer would promote the interests of justice, and (3) whether a transfer would serve the parties' and witnesses' convenience. *Id.* Courts have broad discretion to grant or deny a motion for transfer of venue under 1404(a). *Overland, Inc. v Taylor*, 79 F. Supp. 2d 809, 811 E.D. Mich. 2000) (citing *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989)). The moving party bears the burden of

18

demonstrating that, in light of these factors, "fairness and practicality strongly favor the forum to which transfer is sought." *Thomas v. Home Depot U.S.A., Inc.*, 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001) (quoting *Rowe v. Chrysler Corp.*, 520 F. Supp. 15, 16 (E.D. Mich. 1981)).

Attempting to meet its burden, Taft agues without support "all of the relevant events occurred in Ohio" (Taft brief, p 11). This statement is simply not true. While Taft argues that Barnes works in the Cleveland office, that may be the only activity relevant to this case that took place in Ohio.[8] BPC is located in Michigan, and Taft's tortious conduct (along with those of Perrino, Great Lakes Steel and Jade-Sterling) led to the earlier litigation in this Court, *Bar Processing Corporation v Dennis J. Perrino*, et al, U.S.D.C., E.D. Mich. Case no. 18-cv-12691. It is not correct, as Taft argues, "Any injury resulting from [Taft's] alleged conflict would have been felt by BPC at its Wickliffe, Ohio facility..." (Taft brief, p 14). Rather, BPC incurred substantial damages when it settled the prior litigation in Michigan.

Taft complains about duplicative litigation, but it is Taft's Barnes who will not consent to this Court's jurisdiction over him (see **Exhibit D**), requiring BPC to file a separate case against Barnes. If Taft truly wanted to serve the interests of justice and conserve court and litigant resources, Barnes would consent to the

---

[8] At this point, Taft's assertion is unsupported, as Taft refused to provide any meaningful discovery response to BPC's first discovery requests. (**Exhibit C**, Taft's October 31, 2019 discovery responses).

jurisdiction of this Court (where his firm is already represented by counsel), and BPC would add him as a Defendant in this case, dismissing the Northern District of Ohio case without prejudice. It is Taft, and not BPC, who has elected to litigate these matters in two different venues.

Transferring venue to the federal court in the Northern District of Ohio, Eastern District, located in Cleveland, Ohio, would not be more convenient for the witnesses and parties. *See Midwest Motor Supply v. Kimball,* 761 F.Supp. 1316 (S.D.Ohio 1991) (convenience for the witnesses is a primary, if not the preeminent, reason for transfer under § 1404]. The convenience of witnesses has been called "the most powerful factor governing the decision of whether to transfer a case." 17 Moore's Federal Practice, § 111.13[1][f][i]. The determination of relative levels of inconvenience "rest[s] within the sound judicial discretion of the district judge." *McCuiston v Hoffa,* 313 F.Supp.2d 710, 719. Transferring venue cannot result in an exchange of inconvenience from one party to the other. *Superior Consulting v. Walling,* 851 F.Supp. 839, 845 (E.D.Mich.1994). (Cohn, J.)

In *Kelly Services v Eidnes*, 530 F.Supp.2d 940, 949 (2008), without naming or numbering them, the Defendant, a legal recruiting professional, argued in her motion to transfer venue from this Court to Minnesota pursuant to § 1404 that her material witnesses were the numerous law firms and lawyers she contacted in the Minneapolis area as part of her job responsibilities. This Court denied the motion,

holding, "However, it is also true that there will be testimony required from witnesses located in Troy, Michigan and that much of the evidence relating to Kelly Service's confidential information is located here in Michigan. **As such, a change of venue would only trade inconveniences.**" *Id.* (Emphasis Added).

The same reasoning applies here, as a change of venue from this Court in Detroit to the federal court in Cleveland (about 170 miles away) would only trade inconveniences. BPC witnesses, including Chief Executive Officer Paul Lanzon, President Terry Moran, Human Resources manager Jennifer Bellard and BPC corporate record keepers, are all located at BPC's Flat Rock, Michigan headquarters. Moreover, as in Kelly Services, the confidential information, other investigative records and records supporting BPC's claim for damages are all located in Michigan. BPC's front office functions are centralized through its Flat Rock, Michigan headquarters. The servers for both the email and internet systems are housed in Flat Rock.

Continuously from late 2015 through at least August, 2019, Taft represented BPC in multiple litigation matters involving BPC employees, including Willie Edwards and Anthony Johnson. As such, there was an ongoing attorney-client relationship between Taft and BPC, a Michigan based company, during that time period. In connection with that continuous relationship, Taft attorney Lawrence Davidson worked directly with BPC's representatives located at BPC's Flat Rock,

21

Michigan headquarters, and Taft sent all invoices directly to BPC's Flat Rock, Michigan headquarters.

At a minimum, transferring venue from the Federal Court in Detroit to the Federal Court in Cleveland would merely trade inconveniences.  Accordingly, Defendant's motion to transfer venue pursuant to 28 U.S.C. §1404 should be denied, as none of the factors supports the motion, including the primary factor relating to the convenience of the parties and witnesses.

## CONCLUSION

For the above reasons, Plaintiff requests that this Court deny Defendants' motion for judgment on the pleadings or, alternatively, to transfer venue.

Respectfully submitted,

LENNON LAW PLLC

/s/Edward G. Lennon
Edward G. Lennon (P42278)
Attorney for Plaintiff
355 S. Old Woodward, Ste. 100
Birmingham, MI 48009
(248) 723-1276
elennon@lennonlawpllc.com

Dated: November 8, 2019

22

## Proof of Service

I certify that on November 8, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record herein at their respective addresses as disclosed on the pleadings.

Signature: /s/Catherine A. Conti

Catherine A. Conti
355 S. Old Woodward, Ste. 100
Birmingham, MI 48009
(248) 723-1276
cconti@lennonlawpllc.com

23